IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TYRONE GORDON                                                    PETITIONER

VS.                                        CIVIL ACTION NO 3:12cv887-DPJ-FKB

RONALD KING                                                     RESPONDENT

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

Tyrone Gordon was indicted for murder and aggravated assault in the Circuit Court of Holmes County, Mississippi.  The cause was tried to a jury, which failed to reach a verdict on the murder charge and convicted Gordon of aggravated assault.  He was sentenced to serve a term of twenty years.  The Mississippi Court of Appeals affirmed his conviction.  *Gordon v. State*, 76 So. 3d 198 (Miss. Ct. App. 2011).  Thereafter he sought leave from the Mississippi Supreme Court to file for post-conviction relief; this request was denied.

Gordon then filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, setting forth the following grounds for relief:

1.    The indictment was defective because it failed to cite the correct statute.

2.    The indictment was defective because it failed to specify the judicial district in which the crime was committed.

3.    The trial court erred in allowing the conviction for aggravated assault to stand.

4.    Gordon's attorney rendered ineffective assistance because of the following failures:

      A.      He did not object to the indictment or move for a mistrial on the basis

of the defective indictment.

    B.    He failed to move for a mistrial or object when the prosecution failed to prove its case.

5.    The conviction should be vacated and the sentence set aside because of Gordon's actual innocence.

6.    Gordon was denied his rights to a speedy and public trial.

7.    The conviction and sentence derived from prosecutorial misconduct.

8.    Gordon's confession was involuntary.

9.    The conviction derived from an improper in-court identification.

Having carefully reviewed the petition, the response, the reply, and the state court record, the undersigned recommends that habeas relief be denied.

## II. FACTS

On the evening of Thursday, September 17, 2009, Tyrone Gordon and Jonathan Tillman went to the Yellow Tree club in their hometown of Lexington, Mississippi.  Also at the Yellow Tree that evening were Kerry Head and Thomas Hall.  Gordon and Head became involved in a verbal altercation.   All four left at the request of the owner.

The following evening, Gordon and Tillman rode with LeMarie Smith in Smith's black Honda Accord to a club in Thornton, Mississippi.   Head and Hall were also at the club, and Gordon and Head again exchanged words.  Head and Hall left in Hall's automobile and headed north on Highway 49.  A car with its lights turned off came up behind them and began shooting.  After receiving a gunshot wound, Hall lost control of the car, and the car left the highway and flipped onto its roof.  Hall died as a result of a gunshot wound to the back.

Smith and Tillman were indicted along with Gordon for the murder of Hall (count one) and the aggravated assault of Head (count two).   Smith subsequently entered a plea of guilty to accessory-after-the-fact and received a suspended sentence of five years. Tillman pleaded guilty to conspiracy to commit a crime and was sentenced to five years with one year suspended.

The two accomplices were the primary prosecution witnesses at trial.  Smith testified that on Friday evening, September 18, he picked up Tillman and Gordon and drove to the club in Thornton.  Gordon and Tillman brought along two weapons: a .40 caliber handgun and an assault rifle.  When they arrived at the club, Gordon and Tillman got out of the car, while Smith remained in the car.  After Tillman and Gordon had returned to the car, Gordon directed Smith to follow the car in which Head and Hall were leaving the club.  As Smith was driving, Gordon instructed Smith to hurry up and catch Head and Hall.  When Smith's car caught up with them, Gordon, who was sitting in the front seat, let down the window and filed at Hall's car fifteen to twenty times with the assault rifle.  When Hall's car swerved, Gordon directed Smith to turn around.  They returned to Lexington, where Smith dropped Gordon and Tillman off at Gordon's home.

Tillman's testimony was as follows.  On Thursday evening, the 17th, Tillman was at the Yellow Tree with Gordon when Head and Hall pulled up.  Gordon and Head exchanged words concerning Gordon's girlfriend, and the owner of the establishment asked them all to leave.  The following night, Tillman traveled with Smith and Gordon to the club in Thornton.  Tillman brought a .40 caliber handgun, and they also had an assault rifle in the car.  After the trio arrived at the club, Tillman and Gordon got out of the car.

They were in the parking lot talking when Head and Hall pulled up and went inside the club. Tillman returned to the car before Gordon. Head and Hall later came out of the club and drove away. Gordon then jumped into Smith's car and instructed Smith to follow Head and Hall. When Smith caught up with Hall's car, Tillman shot a couple of times out the window with the .40 caliber handgun. Gordon reached across Tillman into the back of the car, retrieved the assault rifle, and fired at least seven to ten shots. When Hall's car swerved off the road, Smith turned around and went to Lexington. Smith let Gordon and Tillman out at Gordon's home, where Gordon gave the two guns to his brother Chris Gordon. Later Gordon "made up a story" that they had gone to Greenwood that evening and returned to Gordon's house.

Also testifying for the state was Kerry Head. Head stated that he argued with Gordon and Tillman on Thursday evening at the Yellow Tree and again the next night in the parking lot of the club in Thornton.  After encountering Gordon and Tillman in the parking lot, he and Hall went inside the club for about ten to fifteen minutes but decided to leave after receiving a telephone call. Head and Hall then exited the club and returned to Hall's car. As he and Hall pulled out of the Thornton club parking lot, Head looked back and saw Gordon and Tillman huddled together. Head and Hall traveled north on Highway 49 toward Tchula with Hall driving. A short time later, Head reached down to connect Hall's phone to the charger, and when he raised up, Hall told him they were being shot at. They both got down low in their seats, and Hall continued to drive. Head testified that he heard "a lot of bullets" and felt something cutting into the back of his car seat. Eventually,

Hall fell over and lost control of the car.  The car went into a ditch, flipped over several times, and landed on its roof.

Rickettia Washington was a cousin of Hall and an acquaintance of Head. Washington left Greenwood late on the night of the 18th and headed south on Highway 49.  She testified that she met Hall's car on the highway.  A car was following behind with no lights on.  The second car then pulled beside Hall's car into Washington's lane, and Washington pulled over to avoid a collision.  She heard approximately three gunshots and then observed Hall's car leave the road and flip over.  The other car, which she described as a black older model Honda Accord, turned around and passed by her.  Washington went to Hall's car and stayed at the scene until he was taken to the hospital.

The other prosecution witnesses were two law enforcement officers and the pathologist who performed the autopsy on Hall.  The pathologist testified that the cause of Hall's death was a gunshot wound to the back.  The bullet for this wound was not recovered.

Gordon did not take the stand and called only one witness, his brother Matt Gordon, who worked in the kitchen at the Yellow Tree.  The substance of his testimony was that Tillman and Head had instigated the verbal altercation on Thursday evening.

### III.  ANALYSIS

### A.  Procedurally-barred Claims

Grounds six, seven, eight, and nine of the petition were presented to the Mississippi Supreme Court in Gordon's application for post-conviction relief and were rejected as procedurally barred.  Where a state prisoner has defaulted his federal claims

in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   A procedural rule is "adequate" if it is regularly and consistently applied. *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988); *see also Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995) ("An `adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims").   A state procedural rule is presumed to be adequate when the state court expressly relies upon it in denying collateral relief. *Lott v. Hargett*, 80 F.3d 161, 65 (5th Cir. 1996); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).

Gordon has made no allegation or argument in his habeas petition that the procedural bars relied upon by the state court were inadequate to support the rejection of these claims; neither has he made any showing as to the cause of his defaults, actual prejudice as a result of the alleged constitutional violations, or that failure to address the merits of these claims will result in a miscarriage of justice.   Accordingly, the undersigned concludes that the state court's holding that these claims were procedurally barred precludes consideration of them.

### B.  Claims Adjudicated on the Merits by the State Court

Grounds one through five of Gordon's petition were adjudicated on the merits by the state court, either in his direct appeal or in his post-conviction proceeding.  They are therefore subject to the highly deferential standard of review set forth in the Antiterrorism

and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), which allows habeas

relief in this case only if the state court's rejection of Gordon's claims involved "an

unreasonable application of . . . clearly established Federal law . . .  as determined by the

Supreme Court of the United States" or "an unreasonable determination of the facts" in

light of the evidence presented to the state court.  *Id.*  The Supreme Court has repeatedly

emphasized that " 'an *unreasonable* application of federal law is different from an *incorrect*

application of federal law.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams v.*

*Taylor*, 529 U.S. 362, 410 (2000)).  "[A] federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529

U.S. at 411.  Rather, the application must be not only incorrect but also "objectively

unreasonable."  *Id.* at 409.

     *Grounds One and Two:  Defective Indictment*.  Gordon argues that the

indictment was defective because it failed to adequately inform him of the charges against

him and to identify the place where the crime occurred.  Count two of the indictment

recited the elements of aggravated assault, but its citation contained a typographical error,

in that the citation was to Miss. Code Ann. § 97-3-7(2)(b), the portion of the statute

dealing with enhanced penalties for assault, rather than § 97-3-7(2)(a), the section setting

forth the elements of aggravated assault.  Furthermore, the indictment failed to identify the

judicial district in which the crime occurred.

     Federal habeas relief is available for insufficiencies of a state indictment only where

the petitioner can demonstrate that the indictment was so flawed that the trial court had no

jurisdiction.  *Evans v. Cain,* 577 F.3d 620, 624 (5th Cir. 2009).  While the statutory citation was incorrect, the indictment nevertheless tracked the appropriate portion of the statute and set out the elements of the crime of aggravated assault.  Furthermore, Gordon had clear notice of the judicial district in which the crime was alleged to have occurred, as the indictment identified the location as Holmes County, Mississippi, a county that is comprised of a single judicial district.  The state supreme court rejected these claims, and that decision was not unreasonable.  Relief is not available for grounds one or two.[1]

**Ground Three: Sufficiency of the Evidence.** In ground three, Gordon argues that the prosecution failed to prove its case against him and that the trial court erred in allowing his conviction to stand. This is essentially a challenge to the sufficiency of the evidence.  Habeas relief is available for insufficiency of the evidence only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Gordon has failed to make any specific argument in his petition in support of ground three.  On direct appeal, he argued primarily that the testimony of Smith and Tillman could not support the verdict because the testimony was inconsistent with these

---

[1]In his reply, Gordon for the first time argues that the indictment was defective as to the charge of aggravated assault because it did not allege an "overt act."  Given that Gordon never raised this issue in his petition, the undersigned has not construed this as a separate ground for relief.  Furthermore, construing this argument as a habeas claim would require dismissal of the entire petition as "mixed," *i.e.*, having both exhausted and unexhausted claims, as this issue was never presented to the state court.  *See Rose v. Lundy*, 455 U.S. 509 (1982) (requiring dismissal of mixed petitions).

witnesses' initial statements to authorities.[2]  The court of appeals carefully considered these arguments and concluded that the accomplices' testimony was sufficient to support Gordon's conviction for aggravated assault.  This decision was based upon a reasonable interpretation of *Jackson v. Virginia.*  Therefore habeas relief is unavailable.[3]

### Ground Four:  Ineffective Assistance of Counsel.

*Standard of Review.*  Analysis of ineffective assistance claims begins with the well-known test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   Under *Strickland*'s two-prong analysis, a petitioner must first show that his attorney's performance was deficient.  *Id.* at 688.  "Deficient" means that counsel's performance was "outside the wide range of professionally competent assistance."  *Id.* at 690.  If a petitioner succeeds in establishing this first prong, he must go on to demonstrate that his attorney's deficient performance prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  The standard of review of an attorney's performance is "highly deferential," and a court considering an ineffectiveness claim is to "indulge a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance." *Id.* at 689.

---

[2]During their first interviews with authorities, both Smith and Tillman claimed that they had no involvement in the shooting.  Subsequently each gave a statement that was substantially consistent with his trial testimony.

[3]In his section of the reply addressing the sufficiency of the evidence, Gordon again raises for the first time a new argument - that his conviction of aggravated assault, after he had been acquitted of murder, violated the double jeopardy clause. For the same reasons as set forth in note 2 *supra*, the undersigned has not construed this as a separate ground for relief.

9

The difficulty faced by a habeas petitioner in seeking to establish a claim of ineffective assistance is compounded when the claim is viewed through the lens of § 2254(d).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington v. Richter,* 131 S.Ct. 770, 788 (2011).  Thus, view of Gordon's claims of ineffective assistance of counsel is "doubly deferential."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

*Claims.*  Gordon's ineffective assistance claims are related to the two claims analyzed above and for that reason merit only brief discussion.  Gordon first complains that his attorney did not challenge the sufficiency of the indictment or move for a mistrial because of the indictment's alleged deficiencies.  As explained above, the indictment was sufficient under Mississippi law, and the state supreme court so held in rejecting Gordon's claims on this issue.  Thus, Gordon can meet neither the deficiency prong nor the prejudice prong of the well-known test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  It follows, *ipso facto*, that the state court's rejection of this claim of ineffective assistance was reasonable.

Gordon's remaining allegation of ineffective assistance is that his attorney failed to object or "move for a mistrial" when the state "failed to prove" its case.  The record, however, shows that defense counsel moved for a directed verdict both at the close of the state's case and at the close of the defense's.  Notwithstanding counsel's efforts, the trial court concluded that the evidence was legally sufficient to support the verdict on the aggravated assault charge, and the court of appeals agreed.  The state court's adjudication of this claim was not based upon an unreasonable application of *Strickland*.

10

In his reply, Gordon accuses defense counsel of other acts of deficient performance. Specifically, he alleges that his attorney failed to interview multiple alibi witnesses and to properly investigate the case. Because this claim was not raised in the petition, it is not properly before the court. In any event, the claim is wholly without merit. "To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 363 (5th Cir. 2005). Gordon identifies no alibi witnesses and gives no specifics as to what would have resulted from a more detailed investigation.[4]

**Ground Five: Actual Innocence.** In ground five, Gordon argues that he is entitled to habeas relief because he is innocent. An allegation of actual innocence does not in and of itself state a claim for habeas relief. *Parr v. Quarterman*, 472 F.3d 245, 252 (5th Cir. 2006) (citing *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). Rather, actual innocence is merely a gateway by which an otherwise procedurally barred constitutional claim may be considered on the merits. *Id.* Furthermore, a petitioner must first raise a "substantial doubt" about his guilt in order to "open" this gateway. *Id.* (citing *Dowthitt v. Johnson,* 230 F.3d 733, 741 (5th Cir. 2000)). Gordon has not argued that any otherwise barred claim should be considered on the merits because of this exception and, in any event, he has failed to raise a "substantial doubt" about his guilt.

## IV.  CONCLUSION

---

[4]Gordon raised this claim in his application for post-conviction relief. However, his contentions were no more specific there than here.

11

Grounds six, seven, eight, and nine are procedural barred.  Gordon has failed to establish that the state court's adjudication of his remaining claims was contrary to, or involved an unreasonable application of, clearly established Supreme Court law or was based upon an unreasonable determination of the facts.   Accordingly, the undersigned recommends that habeas relief be denied and the petition be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 25th day of November, 2015.

/s/ F. Keith Ball_____
UNITED STATES MAGISTRATE JUDGE